IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

$69,194.00 IN UNITED STATES
CURRENCY,

Defendant.

Civil No. 8:17CV 432

**COMPLAINT FOR FORFEITURE *IN REM***

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *In Rem*

2. The Defendant property consists of $69,194.00 in United States currency seized on July 24, 2017, from a 2004 BMW during a traffic stop on westbound Interstate 80 in Seward County, Nebraska. Ernest Garrett was driving the vehicle; Paul Huffer was the only passenger. The Defendant property is presently in the custody of the U.S. Customs and Border Protection in Minneapolis, Minnesota.

## Jurisdiction and Venue

3.     This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881.

4.     This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

6.     The Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

7.     On July 24, 2017, at approximately 1:10 p.m., Seward County Sheriff's Office Sergeant Michael Vance, driving a marked patrol vehicle, was parked in the cross-over facing north on Interstate 80 near mile marker 373, in Seward County, Nebraska, running stationary radar on westbound traffic. He saw a dark colored four-door vehicle travelling west on Interstate 80 move from the passing lane to the travel lane without activating its signal until both passenger side tires had already crossed the center line. This is a violation of the Nebraska

2

Rules of the Road. As the vehicle passed the sergeant's location, he saw it contained two male occupants. They both turns their heads to look at the sergeant's vehicle. The passenger turned in his seat after the vehicle had passed the sergeant's location, continuing to look at the sergeant's vehicle. As this was occurring, the vehicle drove across the white line on the north shoulder of the travel lane of the interstate. This, too, is a violation of the Nebraska Rules of the Road. As the vehicle passed Sgt. Vance, he saw the rear windows of the vehicle were rolled down. At the time of this observation, the outside temperature was approximately ninety-eight degrees.

8.     Sgt. Vance pulled on to the interstate and proceeded west to conduct a traffic stop on the vehicle. During that time, he noticed the vehicle was a blue BMW with a South Dakota license plate. He also noticed the vehicle was travelling 63 miles per hour when the rest of the traffic was travelling near the posted speed limit of 75 miles per hour. Sgt. Vance conducted a traffic stop on the vehicle near mile marker 367 on Interstate 80 in Seward County, Nebraska.

9.     Sgt. Vance approached the passenger side of the vehicle and motioned for the driver, identified as Ernest Edwin Garrett, Jr., to roll down the window. He spoke to Garrett through the opened sunroof, saying the passenger window would not roll down. Sgt. Vance smelled the odor of burnt marijuana coming from the vehicle as he leaned over the top of it to speak with the driver. At the same time, he saw several energy drink cans on the floor of the vehicle and several air fresheners in the vehicle.

10.     Sgt. Vance explained the reason for the stop to Garrett, and told him he would just be getting a warning. He asked Garrett to step back to the patrol vehicle so he could issue the warning citation. Garrett did so, but Sgt. Vance had tell Garrett to close the passenger side door

in order to keep the temperature cool inside the patrol vehicle. Sgt. Vance noted Garrett was breathing heavily even though it was sixty-eight degrees in the patrol vehicle. He also noted Garrett's artery on the left side of his neck was pulsing rapidly. He asked Garrett where they were headed. Garrett said to Las Angeles, to see his daughter's basketball tournament. Garrett could not give Sgt. Vance the name of his daughter's team.

11.     Sgt. Vance returned to Garrett's vehicle to verify the VIN. He identified the passenger as Paul R. Huffer. When Sgt. Vance asked him where they were headed, Huffer replied, "to see his daughter's basketball game". While speaking with Huffer, Sgt. Vance saw a flip phone in the driver's side door pocket, a smart phone lying on the console, and Huffer holding a third phone. Sgt. Vance saw the vehicle's odometer was at 277,671 miles.

12.     Sgt. Vance returned to his vehicle and noticed Garrett had gotten out of it. Sgt. Vance instructed Garrett to get back into the patrol vehicle so Garret could sign the warning. Once Garrett signed the warning, Sgt. Vance told him he was free to leave. Garrett stepped out of the vehicle, then Sgt. Vance asked Garrett if he could ask a few more questions. Garrett responded yes, and returned to sitting inside the patrol vehicle. Sgt. Vance asked Garrett if there were any weapons in his vehicle. Garrett said no, and shook his head no. Garrett also became irritated, asking if he looked like someone. Sgt. Vance asked Garrett if he any large amounts of U.S. currency in his vehicle. Garrett said no, but did not shake his head simultaneously. Sgt. Vance asked Garrett if he any drugs in the vehicle such as marijuana, cocaine, methamphetamine or heroin. Garrett looked back toward his vehicle, replied no, and shook his head no.

13.     Sgt. Vance asked Garrett if he could search the vehicle. Garrett became agitated. He denied consent and again asked Sgt. Vance if he looked like someone. Sgt. Vance said he

4

had already answered that question several times and said no, Garrett does not look like someone. Sgt. Vance told Garrett he was going to deploy his Nebraska-certified drug detection canine around Garrett's vehicle. Garrett said no, and started to walk away from the patrol car. Sgt. Vance instructed Garrett to have a seat in the patrol car. Garrett argued he did not want to do that. Sgt. Vance explained he was going to get his dog out of the passenger side of the vehicle. He wanted Garrett to stay in the vehicle so there was no risk of the dog biting Garrett. Garrett then sat back down in the front passenger seat of the patrol car.

14.    Sgt. Vance deployed his Nebraska-certified drug detection canine around Garrett's vehicle. The dog indicated at the trunk of the vehicle. Sgt. Vance turned to put his canine back in the patrol vehicle and noticed Garrett again had gotten out of the vehicle. Sgt. Vance directed Garrett to get back into the patrol car. He did so.

15.    Sgt. Vance went back to the BMW and spoke with Huffer. He asked Huffer if he knew of any reason why the dog would indicate on the vehicle. Huffer replied, "I don't smoke marijuana". Sgt. Vance asked Huffer how long they were going to be in California; Huffer said five days.

16.    Sgt. Vance returned to his patrol vehicle and spoke to Garrett. He asked how long they were going to be in California. Garrett said they would be there until August 5th or 6th. Garret asked Sgt. Vance if he had stopped the BMW because Garrett was from Oregon. Sgt. Vance told Garrett he had no way of knowing Garrett was from Oregon since the vehicle had a South Dakota license plate. Garrett said he had smoked marijuana in the vehicle while in Oregon in May. Garrett said that was the last time he was in Oregon.

5

17. Sgt. Vance again went to the BMW. He asked Huffer to step out of the vehicle. Huffer did so, telling Sgt. Vance they were going to a boxing match if they could get tickets. Sgt. Vance asked if it was a professional match; Huffer said he did not know.

18. Sgt. Vance began to search the passenger area of the vehicle. Garrett got out of the patrol car, walked up to Sgt. Vance and tried to stop him from searching the vehicle. After getting Garrett back into the patrol car, Sgt. Vance resumed his search of Garret's vehicle. He found a red and black duffle bag on the rear seat. Upon opening it, Sgt. Vance could smell a very strong odor raw marijuana. Additionally, it contained five plastic bags which contained small amounts of marijuana residue in each of them. Under trash in the back seat, Sgt. Vance found a plastic bag which held an opened vacuumed-sealed bag which held one large rubber-banded bundle of U.S. currency. The letter "E" was written on the vacuumed-sealer bag. Under the driver's seat, next to air fresheners, Sgt. Vance found a plastic bag which contained another vacuumed-sealed bag with the letter "E" on it. It contained two large rubber-banded U.S. currency. Sgt. Vance found a green backpack in the trunk of the vehicle. It contained several rubber-banded bundles of U.S. currency. During a search, Sgt. Vance found very little clothing in the vehicle. There were no suitcases in the vehicle.

19. Sgt. Vance found a total of $69,194.00, cash, in the BMW. It is the Defendant property in this case.

20. After a *Miranda* advisement, Huffer told Sgt. Vance he was a gambler. He stated he won the money in the vehicle at a casino. He then stated he won it at poker games outside of the casino.

6

21.    Sgt. Vance found a work order receipt dated 2015 showing 93,000 miles on the

BMW. Sgt. Vance also found receipts in the vehicle indicating Garrett had travelled to Oregon

several times in the past year, and three times since May, 2017.  Huffer said all the money in the

vehicle was his and Garrett had no part in it.

### Claim for Relief

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be

proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court;

that due notice be given to all interested parties to appear and show cause why forfeiture should

not be decreed; that the Defendant property be condemned, as forfeited, to the United States of

America and disposed of according to law and regulations; that the costs of this action be assessed

against the Defendant property; and for such other and further relief as this Court may deem just

and equitable.

UNITED STATES OF AMERICA,
Plaintiff

ROBERT C. STUART
Acting United States Attorney

By:

NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
E-mail: nancy.svoboda@usdoj.gov

## VERIFICATION

STATE OF NEBRASKA      )
                                            )  ss.
COUNTY OF DOUGLAS   )

Pursuant to Rule C(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states the facts set forth herein are true and correct according to the best of her knowledge and belief.

NANCY A. SVOBODA
Assistant U.S. Attorney

Subscribed and sworn to before me this 7th day of November, 2017.

GENERAL NOTARY - State of Nebraska
REBECCA K. LESSER
My Comm. Exp. June 9, 2019

Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney

8